**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY**

| | | |
|---|---|---|
| **VALERIE CULLERS,** | | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.: 2:26-cv-02520-JWB-GEB** |
| **UNIVERSITY OF KANSAS HOSPITAL AUTHORITY, et al.** | ) | |
| **Defendants.** | ) | |

**DEFENDANT RODDY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Plaintiff improperly seeks to impose individual liability on individual defendant, Abigail Roddy ("Roddy"), under 42 U.S.C. § 1983 for alleged discrimination and retaliation arising from Plaintiff's employment with University of Kansas Hospital Authority ("UKHA"). Plaintiff's claims against Roddy fail as a matter of law and should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Section 1983 does not provide a vehicle to convert an ordinary workplace dispute into a constitutional claim against a plaintiff's individual supervisor who did not act under "color of state law." Plaintiff fails to plausibly allege that Roddy acted under "color of state law" and that Roddy herself violated Plaintiff's constitutional rights or federal law. Roddy is not a State employee, and Plaintiff only alleges that she possessed the ordinary powers of a supervisor. Accordingly, Plaintiff's allegations do not, and cannot, plausibly establish that Roddy possessed or exercised the sovereign power of the State under any of the Tenth Circuit's state action tests. Finally, even assuming Plaintiff has established Roddy's state action, Plaintiff's § 1981 claims independently fail because she does not establish that *Roddy's* specific conduct was the but-for cause of Plaintiff's termination. For these reasons, and as set forth below, Counts III–V should be dismissed.

## I. <u>**FACTUAL BACKGROUND**</u>[1]

Accepting as true all *factual* assertions in the Complaint, as the Court must when considering a motion to dismiss, Roddy sets forth this statement of facts relevant to her Motion:

Plaintiff Valerie Cullers is a former registered nurse who was employed by UKHA. Doc. 1 at ¶ 5. Roddy supervised Plaintiff in the Ambulatory Clinic. *Id.* ¶ 10. Plaintiff alleges she is Hispanic, of Colombian ancestry and national origin, and Spanish speaking. *Id.* ¶ 6. Plaintiff alleges that, before July 2025, Roddy subjected her to greater scrutiny and less favorable working conditions than white and U.S. born nurses. *Id.* ¶¶ 33–47. Plaintiff alleges that, on July 9, 2025, Roddy glared at her and prepared a written warning for her. *Id.* ¶¶ 60–63. Plaintiff claims that she received the written warning from Roddy on July 10, 2025, during a meeting, and that at that meeting, Plaintiff complained of race and national-origin discrimination to Roddy. *Id.* ¶¶ 64–65. Plaintiff alleges that she was subject to increased scrutiny from Roddy after receiving her written warning on July 10. *Id.* ¶ 76.

Plaintiff's employment was terminated on July 23, 2025. *Id.* ¶ 83. Plaintiff alleges Roddy and several other individuals participated in the termination decision, and that Roddy informed Plaintiff of her termination, and escorted Plaintiff from the workplace. *Id.* ¶¶ 80–86.

Plaintiff brings three claims against Roddy in her individual capacity (Counts III–V). Count III alleges Roddy violated the Equal Protection Clause through intentional race and national-origin discrimination. *Id.* ¶¶ 125–132. Count IV alleges Roddy violated Plaintiff's rights under 42 U.S.C.

---

[1] Roddy recites Plaintiff's allegations for the limited purpose of aiding this Court in ruling on the Motion to Dismiss. Roddy does not admit any of the factual allegations contained in the Complaint and reserves the right to deny any of the allegations and/or present contrary evidence in subsequent proceedings in this case if this motion is not granted.

§ 1981 by discriminating against Plaintiff because of her race and ethnic ancestry in connection with her employment relationship with UKHA. *Id.* ¶¶ 133–156. Count V alleges Roddy violated § 1981 by retaliating against Plaintiff after Plaintiff complained of race and ethnic-ancestry discrimination. *Id.* ¶¶ 157–172.

## II. <u>LEGAL STANDARD</u>

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must assume that the factual allegations in the complaint are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citations omitted). Acting "under color of state law" requires that the defendant exercise power "possessed by virtue of state law and made possible **only** because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941) (emph. added). To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the state is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *West*, 487 U.S. at 49; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931–32 (1982). The ultimate issue in determining whether a person is subject to suit under § 1983 is if the alleged infringement of

federal rights is "fairly attributable to the State" by a person who may fairly be said to be a "state actor." *Lugar*, 457 U.S. at 937.

## III. ARGUMENT

Plaintiff's claims should be dismissed because she failed to plausibly allege facts supporting the key requirement for a § 1983 claim—that Roddy acted under color of state law. UKHA is not the State of Kansas—it is an **independent** body created to provide healthcare. K.S.A. § 76-3304. Thus, Plaintiff's conclusory recitations of the legal standard for § 1983 claims fail to plausibly allege that Roddy—who is not a state actor—can be held liable under § 1983. Further examining Plaintiff's allegations against the Tenth Circuit's tests for state action highlights the deficiencies in her claims. Alternatively, even assuming Plaintiff could establish that Roddy acted under color of law, Counts IV and V fail because the underlying § 1981 claims impermissibly aggregate the actions of several individuals and apply them solely to Roddy.

### A. UKHA is Separate from the State.

Plaintiff's § 1983 claim is premised on the improper assumption that UKHA acts as a governmental entity or the State. University of Kansas Hospital Authority ("UKHA") was created by the University of Kansas Hospital Act to provide healthcare as an independent instrumentality of the state. K.S.A. § 76-3304(a). When analyzing the University of Kansas Hospital Act, the Tenth Circuit concluded that the totality of the circumstances "favors concluding that UKHA is an autonomous entity and not an arm of the state." *Hennessey v. Univ. of Kansas Hosp. Auth.*, 53 F.4th 516, 524 (10th Cir. 2022).

UKHA is governed by a Board of Directors who are not compensated by the State. K.S.A § 77-3304(h). UKHA functions independently, and is empowered to make and execute contracts, borrow money, purchase and lease property, participate in joint ventures, and do all things

necessary or convenient to carry out the purposes of providing healthcare. K.S.A. § 76-3308. Employees of UKHA are explicitly not state employees for any purpose. K.S.A. § 76-3303(h) ("Hospital or authority employees shall not be considered state employees. . . ."); K.S.A. § 76-3303(n)("'Hospital or authority employee' means an employee of the authority who performs services for the university of Kansas hospital . . . . A hospital authority employee shall not be considered to be a state employee.") Notably, in employment matters, the University of Kansas Hospital Act "largely treats UKHA like a private hospital when it comes to hiring, firing, managing, and providing benefits for its employees." *Hennessey*, 53 F.4th at 539. Thus, UKHA is distinct from the State, and cannot be construed as acting as a governmental entity for employment purposes.

**B. The Complaint Does Not Allege Facts Supporting that Roddy Acted Under Color of Law.**

Section 1983 claims should be dismissed under Rule 12(b)(6) when the complaint's well-pleaded facts do not plausibly establish the defendant acted under the color of state law. *See Wittner ex rel. Wittner v. Banner Health*, 720 F.3d 770, 775–81 (10th Cir. 2013) (reversing denial of Rule 12(b)(6) motion and directing dismissal where complaint failed to establish that private hospital, physician, and nurse were state actors); *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386–91 (10th Cir. 2016) (affirming Rule 12(b)(6) dismissal because complaint did not plausibly establish state action). Although the court accepts well-pleaded factual allegations as true, it need not accept the legal conclusion that a defendant acted under color of state law merely because the complaint says so. *Wittner*, 720 F.3d at 775. The purpose of the state-action requirement is "to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014). In the employment

context, the relevant inquiry is whether the person's role as an *employer* was state action. *Caviness v. Horizon Comm. Learning Ctr., Inc.*, 590 F.3d 806, 813 (9th Cir. 2010); *see also, Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1996) (holding that an entity was not a state actor despite designation as a political subdivision in the state constitution where the entity, "in the hiring and firing of its employees . . . acts as a private company . . . not in a government manner.").

Private individuals, like Roddy, *may* only be deemed state actors in limited circumstances. *Lugar*, 457 U.S. at 937. Even where an entity is governmental or public for some purposes (in UKHA's circumstance, the provision of healthcare), if the entity acts as private in its employment decisions, section 1983 claims fail as a matter of law. *See George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996) (although defendant had statutory power from the state to run a prison, relevant inquiry if it was granted the power as an *employer* by the state, and complaint failed to establish defendant had become the government for employment decisions); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (in suit of terminated employee of private prison contractor question is whether defendant acted under color of law in employment context); *Gorenc*, 869 F.2d at 507. The facts of *George*, *Cornish*, are directly applicable here—although Plaintiff conflates UKHA with the State, UKHA is not the state, and its employees are not state employees. K.S.A. §76-3303(h), (n). Here, UKHA acts as a private, rather than governmental, employer. *See Hennessey*, 53 F.4th at 539. Indeed, Roddy is explicitly **not** an employee of the State. *See* K.S.A. § 76-3303(h), (n). Accordingly, Roddy cannot have acted under color of law by virtue of any official capacity. *See Monroe v. Pape*, 364 U.S. 167, 187 (1961).

Plaintiff's allegations about Roddy acting under color of state law are conclusions that cannot support her § 1983 claims against Roddy. For example, Plaintiff alleges Roddy exercised

"UKHA's governmental supervisory authority over Plaintiff's assignments . . . and continued employment" and "acted under color of state law by exercising authority conferred by her by UHKA to supervise Plaintiff, determine or influence Plaintiff's assignments and working conditions, investigate or cause the investigation of alleged misconduct, impose discipline, recommend or cause termination, and communicate and carry out the termination decision." Doc. 1 at ¶¶ 127, 138. These are simply conclusions which fail to establish factual basis for the alleged governmental supervisory authority and its connection to the State itself.

Here, Plaintiff's factual allegations show only that Roddy exercised ordinary supervisory authority in connection with her employment—monitoring Plaintiff's work, imposing discipline, participating in an internal employment investigation and recommending termination. Doc. 1 at ¶¶ 10–11. The Complaint does not, and cannot, allege that the State of Kansas directed, compelled, participated in, or even knew of those decisions, or that Roddy exercised any sovereign power unavailable to an ordinary private employer. Where a complaint fails to allege that the state was involved in the contested employment action, or otherwise showed interest in the defendant's personnel matters, there is not a sufficient basis to find state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). Furthermore, where personnel decisions were made by private parties and turned on their private judgments without a standard set by the state, there is no state action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 53 (1999); *see also*, *Caviness*, 590 F.3d at 813 (finding allegation that public school president's termination of employee was a state action because school was a state actor insufficient). The Complaint uses conclusions to bootstrap Roddy's actions onto UKHA and through UKHA to the State. These conclusory allegations are not facts, and thus, Plaintiff fails to state any § 1983 claim against Roddy. Regardless, even if Plaintiff's allegations

were non-conclusory, they fail to satisfy the Tenth Circuit standards for whether challenged conduct is fairly attributable to the State.

### C. The Complaint Does Not Sufficiently Allege any Non-Conclusory Allegations Supporting that Roddy Acted Under the Color of State Law.

In the Tenth Circuit, Plaintiff must sufficiently allege facts that meet one of four interrelated tests to demonstrate plausibly allege that state action has occurred: (1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446–58 (10th Cir. 1995).

#### 1. Plaintiff fails to set forth facts that satisfy the "Nexus Test."

To meet the nexus test, the plaintiff must demonstrate there is a sufficiently close nexus between the government and the challenged conduct. *Id.* at 1448. A state can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement . . . that the choice must in law be deemed that of the state." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). To demonstrate the state had coercive power or encouragement over challenged private conduct, a plaintiff must show existence of government regulations, funds, or policies that demonstrate such power. *Id.* Here, Plaintiff does not allege any facts which would satisfy the nexus test such that Roddy's actions could be attributable to the state. Consequently, to show Roddy's actions were attributable to the state, Plaintiff must allege a state official directed or state policy resulted in the termination decision. *Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632, 638–39 (10th Cir. 1983) (upholding decision that actor's decision to fire employee did not result from any rule, policy, or decision attributable to the state because no state official or policy was implicated in the termination). Without allegations that the public officials represent or advocate a government position on personnel policy, there is insufficient evidence of state action. *Id.* Plaintiff does not allege any facts that show a state official or state policy caused

the decision to terminate her employment or any alleged adverse action. Thus, Plaintiff's allegations do not meet the nexus test.

**2. Plaintiff fails to set forth facts that satisfy the public function test.**

To meet the public function test for whether a private party is a state actor, a plaintiff must factually allege that the state delegated to that private party, "a function traditionally exclusively reserved to the State." *See Gallagher*, 49 F.3d at 1456 (internal citations omitted). This is a high bar. *Id.* "While many functions have been traditionally performed by government, very few have been **exclusively** reserved to the State." *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (emph. added). The provision of medical care is not a function traditionally exclusively reserved to the state—many private entities provide healthcare. *See Shannon v. Shannon*, 965 F.2d 542, 547 (7th Cir. 1992) ("Clearly, hospital care, while serving the public, is not the exclusive prerogative of the State."). Accordingly, Plaintiff has not sufficiently alleged facts supporting that Roddy can be subject to a § 1983 claim under the public function test.

**3. Plaintiff fails to set forth facts that satisfy the joint action test.**

State action is also present if a private party is a "willful participant in joint action with the State or its agents." *Gallagher*, 49 F.3d at 1453. (internal citations omitted). For this test to be satisfied, state officials and private parties must have acted in concert to deprive constitutional rights. *Id.* Here, there are no allegations that any state official was involved in Plaintiff's termination. Thus, Plaintiff cannot use the joint action test to state a § 1983 claim against Roddy. *See Gallagher*, 49 F.3d at 1456.

**4. Plaintiff fails to set forth facts that satisfy the symbiotic relationship test.**

Lastly, state action may be present if the state "has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the

challenged activity." *Gallagher*, 49 F.3d 1451. Extensive regulation, receipt of funds or performance of important public functions do not establish a symbiotic relationship. *Gallagher*, 49 F.3d at 1451 (collecting cases). Rather, the inquiry focuses on whether the State is sufficiently intertwined with the specific conduct challenged that the private actor's conduct may fairly be treated as that of the State itself. *Id.*

Plaintiff does not allege facts showing that the State of Kansas was interdependent with Roddy in connection with any of the alleged adverse personnel decisions taken against Plaintiff. Nor does Plaintiff allege facts showing that the State shared in the benefits or burdens of the challenged personnel decisions, that Roddy and the State jointly administered Plaintiff's employment, or that Kansas retained control over the particular disciplinary and termination decisions at issue. Indeed, by statute, neither Plaintiff nor Roddy were State employees and therefore, the State could not have control over Plaintiff's employment. *See* K.S.A. § 76-3303(h), (n). The symbiotic-relationship test requires more than an institutional connection between a private actor and the government; it requires interdependence with respect to the challenged activity itself. *See Gallagher*, 49 F.3d at 1451–53. Accordingly, Plaintiff's conclusory allegation that Roddy exercised "governmental supervisory authority" does not plausibly establish the mutual interdependence necessary under the symbiotic relationship test.

**D. Counts IV and V Independently Fail to State Claims Under § 1981.**

Plaintiff's Count IV and V also fail to independently satisfy the substantive requirements to state a claim under 42 U.S.C. § 1981. Section 1981 protects the equal right to make and enforce contracts without intentional racial discrimination, and a plaintiff must plausibly allege that race was a but-for cause of the injury. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). Although a plaintiff need not plead a prima facie case, the elements remain

relevant to whether the pleaded facts make liability plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192–94 (10th Cir. 2012). Counts IV and V rely entirely on conclusions and combine several people's discrete actions into the "but-for causes" of Roddy's conduct. Doc. 1 at ¶¶ 144, 165. Labels are not entitled to an assumption of truth. *See Ashcroft* 556 U.S. at 678.

**1. Count IV fails because Plaintiff does not plausibly allege that Roddy caused Plaintiff's alleged injury because of Plaintiff's race.**

Count IV impermissibly aggregates the conduct of several individuals into individual liability against Roddy. Section 1983 requires that each official is liable **only** for her own alleged misconduct. *See Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2013). The plaintiff must identify the particular conduct that caused the alleged deprivation. *Id.* ("Because § 1983 and *Bivens* are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants."). "[I]t is particularly important" that plaintiffs "make clear exactly *who* is alleged to have done *what* to *whom,* ... as distinguished from collective allegations." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (internal citations and quotation marks omitted). It is also insufficient for a plaintiff to make undifferentiated contentions that "defendants" infringed their rights. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998). The Complaint alleges that Jones-Loo, Human Resources, Employee Relations, Reed, Shahbazi, and Roddy all participated in the events preceding termination. Doc. 1 at ¶¶ 75, 79–83. Count IV, however, then impermissibly collapses that process into the conclusion that Roddy "caus[ed], recommend[ed], participat[ed] in, and personally carr[ied] out" the termination. Doc. 1. at ¶ 143(i). Allegations that Roddy drafted documents, supplied information, attended discussions, or communicated the ultimate termination decision do not establish that her alleged racial animus was the but-for cause of a termination decision involving, according to Plaintiff's own allegations,

at least four individuals. Accordingly, regardless of whether Plaintiff sufficiently pled Roddy was a state actor, Count IV should be dismissed for failure to state a claim.

**2. Count V fails because Plaintiff does not allege facts supporting that Roddy retaliated against her.**

Plaintiff fails to state a claim for retaliation because she alleges Roddy's retaliatory act began before she made her alleged complaint. When courts consider § 1981 retaliation claims, "the principles set forth in Title VII retaliation cases apply with equal force[.]" *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). "[A] plaintiff bringing a § 1981 retaliation claim must establish that retaliation played a part in the employment decision …." *Id.* (quotations omitted). An employer does not create evidence of retaliation merely by continuing an employment action that was already contemplated before it learned of protected conduct. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam) ("[P]roceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality[.]"); *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1370–71 (10th Cir. 2015) (affirming Rule 12(b)(6) dismissal where the challenged conduct was the next step in a process already underway).

Plaintiff alleges that Roddy prepared the final written warning on July 9. Doc. 1 at ¶ 63. Plaintiff, however, also alleges she first told Roddy that she believed Roddy was discriminating against her on July 10, and expressly pleads Roddy's actual knowledge "no later than" that July 10 meeting. *Id.* at ¶¶ 65, 67, 162. Roddy's preparation of the final written warning **before** the protected activity of which Roddy is alleged to have had knowledge forecloses any inference that the written warning was retaliatory. *See Breeden*, 532 U.S. at 272. Because Roddy allegedly prepared the warning on July 9, the allegation that it was delivered on July 10 does not plausibly establish that the warning was caused by Plaintiff's later complaint on July 10.

Nor can Plaintiff transform Roddy's preexisting scrutiny into retaliation merely by labeling it as "intensified" after July 10. Doc. 1 at ¶¶ 163(a), 165. The Complaint devotes numerous paragraphs to alleging that Roddy subjected Plaintiff to heightened monitoring and scrutiny beginning well before July 2025 and that the scrutiny increased after another nurse left. Doc. 1 at ¶¶ 33–47. The only fact set forth to support this alleged "escalation" is that Roddy was present in or near the workroom on July 15 and July 18. *Id.* at ¶¶ 76–77. Those allegations, however, do not plausibly show that protected opposition was the but-for reason for that conduct where Plaintiff alleges a preexisting pattern of the same scrutiny.

Finally, Plaintiff's termination theory must also be tied to Roddy's **own** conduct and knowledge. Count V alleges that several actors participated in the July 23 termination decision, including Jones-Loo, Shahbazi, Employee Relations, Reed, and Roddy. *Id.* at ¶¶ 79–83. It then characterizes Roddy as having "participat[ed] materially in and influenc[ed]" the decision. *Id.* at ¶ 163(f). Section 1983, however, does not permit liability merely because an individual participated. *See Pahls*, 718 F.3d at 1225–26. The Complaint does not identify what authority Roddy possessed, or the information the ultimate decisionmaker relied on because of her, or facts showing that the termination would not have occurred but for Roddy's alleged retaliatory motive. Plaintiff's conclusory allegations of "influence" and "but-for" causation do not supply those missing facts. Accordingly, regardless of whether Plaintiff sufficiently pled Roddy was a state actor, Count V should be dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's III through V causes of action against individual defendant, Abigail Roddy should be dismissed, with prejudice, for failure to state a claim.

Dated: October 14, 2026

Respectfully submitted,

POLSINELLI PC

By: *_/s/ Meghan H. Hanson_*
ERIC E. PACKEL (KS #23070)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
epackel@polsinelli.com
eberg@polsinelli.com

Meghan H. Hanson (#78869)
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
(816) 360-3404
mhanson@polsinelli.com

ATTORNEYS FOR DEFENDANTS
UNIVERSITY OF KANSAS HOSPITAL
AUTHORITY AND ABIGAIL RODDY

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing pleading was served by (__) United States Mail, postage prepaid; ( X ) ECF Notification System; (__) E-mail; and/or (____) Hand Delivery this 14th day of October 2026, to:

Kirk D. Holman
Aiman A. Dvorak
Holman Schiavone LLC
4600 Madison Avenue, Suite 810
Kansas City MO 64112
816-283-8738
Fax: 816-283-8739
kholman@hslawllc.com
advorak@hslawllc.com

ATTORNEYS FOR PLAINTIFF

*/s/ Meghan H. Hanson*
Attorney for Defendant